Filed 3/20/14  P. v. Sanchez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058992 |
| v. | (Super.Ct.No. FVA1101790) |
| ZEUS TRISMEGISTO SANCHEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Ingrid Adamson Uhler, Judge.  Affirmed.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Pursuant to a plea agreement, defendant and appellant Zeus Trismegisto Sanchez pled guilty to assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1]  In

---

[1]  All future statutory references are to the Penal Code unless otherwise stated.

1

exchange, the remaining seven allegations were dismissed, and defendant was sentenced to a stipulated term of three years in state prison with credit for time served. Defendant appeals from the judgment, challenging the denial of a suppression motion[2] as well as the validity of the plea. We find no error and affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

Marlene Gonzalez lived with her sisters, Wendy and Annabel Gonzalez, and other family members in Fontana.[3] In 2011, Marlene began dating defendant. They married a few months before trial commenced in April 2013.

In 2011, defendant was not allowed at the Gonzalez residence. Nonetheless, on September 10, 2011, defendant went to Marlene's residence to get a key. While at the Gonzalez residence, defendant used an object to break the windows on Annabel's truck. Defendant left the residence before the police arrived.

The following night, on September 11, 2011, Marlene saw defendant using a metal object to break the windows on her truck. Marlene did not say anything to defendant because she did not want him to do further harm. The repairs cost around $250.

---

[2] Defendant asserts in his notice of appeal that the appeal is based on the denial of a motion to suppress evidence. However, no such motion was ever presented.

[3] We will refer to Marlene, Wendy, and Annabel Gonzalez by their first names, not out of disrespect but to ease the reader's task.

On April 29, 2012, Marlene and defendant were in the process of ending their relationship. Later that evening, defendant called Marlene, and while on the phone with her, drove to her residence. Defendant then broke the window of Marlene's vehicle. The repairs cost $125.

On May 24, 2012, around midnight, defendant called Marlene and told her that he wanted to get back together with her. Marlene heard dogs barking, looked outside, and saw defendant standing by his car, which was parked in the street outside of her home. As defendant approached the front door, Marlene went outside and told him to leave. Defendant refused to leave unless she came with him. When Marlene refused to go with defendant, defendant shattered the windows on Marlene's vehicles using a hammer he had retrieved from his truck.

As a result of the incident, Marlene's arm began to bleed from cuts. At trial, Marlene claimed that the injuries occurred when defendant "slapped" her arm; and, denied that defendant had purposely pushed her arm into the window. Marlene also denied telling an officer that she saw defendant throw a hammer at her sister Wendy. Marlene was shown pictures taken by officers on May 24, 2012, of her injuries. The pictures included a picture of a cut on Marlene's ear and bruises on Marlene's legs and arms. Marlene claimed those injuries were not from the May 24 incident but were inflicted by defendant a few days earlier.

At the preliminary hearing, Wendy testified that she saw defendant yelling at Marlene and Marlene telling defendant to leave. She also observed defendant smashing

3

the windows of Marlene's vehicles and push Marlene's hand into the broken glass. When Wendy went outside, defendant hit Wendy with the hammer in the thigh and on the right arm, leaving bruises.

On October 16, 2012, a first amended information was filed under case No. FVA1101790, charging defendant with two counts of felony vandalism (§ 594, subd. (b)(1)); one count of misdemeanor vandalism (§ 594, subd. (b)(2)(A); and one count of misdemeanor battery (§ 242).

On December 21, 2012, an information was filed under case No. FVA1201399, charging defendant with two counts of assault with a deadly weapon (§ 245, subd. (a)(1)); one count of assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)); and one count of misdemeanor vandalism (§ 594, subd. (b)(2)(A)).

On January 23, 2013, the People filed a motion to consolidate the two cases. Defendant filed an opposition. On April 2, 2013, the trial court granted the motion based on the nature of the charges, the victims involved in the incidents, and the cross-admissibility of the evidence.

Thereafter, on April 12, 2013, the People filed a second amended information under case No. FVA1101790, charging defendant with the above-noted offenses.

Jury trial began on April 24, 2013. Following Marlene's testimony, on April 29, 2013, defendant pled guilty to assaulting Wendy with a deadly weapon, to wit, a hammer (count 4), in exchange for a stipulated three-year sentence and the dismissal of the remaining charges. The trial court found the plea was entered into freely and voluntarily

4

and that defendant knowingly and intelligently waived his rights. Defendant thereafter requested to be immediately sentenced. Defendant was sentenced in accordance with his plea agreement and awarded credit for time served.

On June 11, 2013, defendant filed a notice of appeal, challenging the validity of the plea, and a request for certificate of probable cause. The trial court granted the request for certificate of probable cause.

II

DISCUSSION

Defendant appealed and, upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his four-page letter brief, defendant generally argues that (1) he was coerced into pleading guilty after the court erred in admitting inadmissible evidence of uncharged acts and photographs of Marlene's injuries; (2) he had received ineffective assistance of counsel for counsel's failure to file a suppression motion, investigate the case, and preclude Marlene from testifying against him; (3) Marlene was coerced into testifying against him; (4) the trial court erred in consolidating the cases; (5) the judge

5

was prejudiced against him because she is a female and all the victims were female; and (6) the witnesses were biased against him and lied.

We reject defendant's claim that he was coerced into pleading guilty. The court asked defendant whether he had been threatened into pleading guilty and whether he had any questions about the proceedings. Defendant responded in the negative. The court also asked defendant whether he was pleading freely and voluntarily, whether he had sufficient time to discuss his case with his counsel, whether he had signed and initialed the change of plea form, and whether he understood his constitutional rights. Defendant responded in the affirmative to all of the court's questions. There is nothing in this record to indicate that defendant was coerced into pleading guilty. We are not persuaded by defendant's after-the-fact, self-serving claim.

We also reject defendant's assertion that his counsel was ineffective for failing to file a suppression motion, investigate the case, or preclude Marlene from testifying against him. To establish ineffective assistance of counsel, defendant must show (1) counsel failed to act in a manner to be expected of a reasonably competent attorney, and (2) counsel's acts or omissions prejudiced him. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692.) Trial counsel did not render ineffective assistance of counsel. Counsel successfully negotiated a plea bargain that was advantageous to defendant—that is, a sentence considerably less than his maximum exposure. Defendant was sentenced in accordance with the plea bargain. To the extent defendant claims that counsel should not have allowed the court to coerce him to accept the plea bargain, the

6

claim fails because he has not shown judicial coercion. Further, counsel also did not provide ineffective assistance by failing to file a suppression motion or a motion to preclude Marlene from testifying against him. Counsel does not render ineffective assistance by failing to make motions that would be futile. (*People v. Price* (1991) 1 Cal.4th 324, 387.)

The other claims raised by defendant, including allegations regarding trial counsel's failure to investigate the case, Marlene being coerced into testifying against him, and the judge and witnesses being biased against him, find no factual support in the record on appeal. In fact, given the nature of the allegations, it appears they are necessarily based upon conduct outside the record on appeal. We cannot consider matters outside the record on appeal. (*People v. Szeto* (1981) 29 Cal.3d 20, 35.)

Finally, the record shows that the trial court correctly consolidated the cases. Offenses that are of the same class of crime or are connected in their commission may, in the trial court's discretion, be charged and tried together. (§ 954.) Joinder of two or more different offenses connected together in their commission is proper if there is "'a common element of substantial importance' in the commission of the offenses. [Citations.]" (*People v. Pike* (1962) 58 Cal.2d 70, 84.) Here, the common elements connecting the two cases and the offenses were the victims and the motive. The fact that some of the different offenses occurred about eight to 10 months apart is immaterial. (See, e.g., *People v. Catlin* (2001) 26 Cal.4th 81, 110-113 [joinder proper even though two murders occurred eight years apart].) Furthermore, the offenses were of the same

class.  "Offenses are of the same class when they possess common attributes . . . ."

(*People v. Leney* (1989) 213 Cal.App.3d 265, 269.)  The offenses were acts of domestic

violence and were within the same class of offenses.  In addition, there is no question that

some of the evidence was cross-admissible.  (See *People v. Soper* (2009) 45 Cal.4th 759,

774; *People v. Geier* (2007) 41 Cal.4th 555, 576.)  The mere presentation of evidence

of a defendant's commission of multiple offenses is a "necessary concomitant of joinder"

and is insufficient to render joinder unduly prejudicial.  (*People v. Hill* (1995)

34 Cal.App.4th 727, 735.)  "If it were, joinder could never be permitted."  (*Ibid*.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have

independently reviewed the entire record for potential error and find no arguable error

that would result in a disposition more favorable to defendant.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
_____
P. J.

We concur:


RICHLI
_____
J.


KING
_____
J.

8